# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO.

**BILL AND EILEEN, LLC,**
**and**
**JOHN AND JANE, LLC**

       **Plaintiffs,**       **IN ADMIRALTY**

**vs.**

**PETER GENOVEZOS**

       **Defendant**

## COMPLAINT FOR DECLARATORY JUDGMENT
### (28 U.S.C. §2201, et. seq. and Fed.R.Civ.P. 57)

Plaintiffs, John and Jane, LLC and Bill and Eileen, LLC (hereinafter collectively referred to as "Plaintiffs"), by and through their counsel, Tisdale and Nast Law Offices, LLC, allege:

## JURISDICTION

1.  This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 et seq. and Fed. R. Civ. P. 57.

2.  Plaintiffs seek declaratory relief concerning admiralty and maritime claims brought for the purpose of determining a question in actual controversy between the parties, namely Plaintiffs' obligation, if any, to pay for Maintenance and Cure, for which Defendant, Peter Genovezos ("Genovezos"), has demanded from Plaintiffs under the doctrine of Maintenance and Cure and is an admiralty and maritime dispute between the parties within the meaning of Fed.R.Civ.P. 9(h).

This Court has Admiralty and Maritime Jurisdiction pursuant to 28 U.S.C. § 1333 and Fed.R.Civ.P. 9(h).

## PARTIES

3.      Plaintiff, John and Jane, LLC is and was at all material times a corporation duly organized under the laws of Massachusetts and the sole owner of F/V JANE ELIZABETH (NO. 597690).

4.      Plaintiff, Bill and Eileen, LLC is and was at all material times a corporation duly organized under the laws of Massachusetts and the sole owner of F/V EILEEN RITA (NO. 971262).

5.      On information and belief, Genovezos is an individual domiciled in Fall River, Massachusetts within this District and was a member of the crews of F/V EILEEN RITA and F/V JANE ELIZABETH.

## FACTS

6.      On November 2, 2001, Genovezos underwent a C6 corpectomy and C5-C6 and C6-C7 discectomy with C5-C7 fusion with bone graft and plate from anterior. The surgery was performed at Massachusetts General Hospital ("MGH") by Dr. Emad Nader Eskandar. His preoperative diagnosis was C5-C6 and C6-C7 disc herniation. He initially presented with right arm, right shoulder, and neck pain since January 2001. At that time, Genovezos complained of an injury while fishing onboard a vessel not owned by Plaintiffs where his body was suspended by his right arm and hand while holding on a line.

2

7.      On July 12, 2002, Genovezos underwent right shoulder arthroscopy and debridement, arthroscopic acromioplasty, arthroscopic distal clavicle resection and superior labral repair with Dr. Gary Perlmutter at Massachusetts General Hospital ("MGH"). His preoperative diagnosis was right rotator cuff tendonitis, AC Joint derangement, possible labral tear.

8.      On June 2, 2006, Genovezos underwent a left shoulder arthroscopy with debridement, arthroscopic acromioplasty, distal clavicle resection, and superior labral repair with Dr. Perlmutter at MGH. His preoperative diagnosis was left rotator cuff tendinitis, left shoulder AC joint derangement, and left superior labral tear.

9.      On March 6, 2007, Genovezos underwent another right shoulder surgery with Dr. Perlmutter. His preoperative diagnosis was right superior labral tear, rotator cuff tendinitis. His operation included right shoulder arthroscopy, debridement, right shoulder arthroscopic acromioplasty and open biceps tenodesis.

10.     On March 2, 2009, Dr. Eskandar examined Genovezos for complaints of pain in his neck and left shoulder and numbness in his fingers. Dr. Eskandar was concerned about his limited range of motion in Genovezos' neck and noted that his bilateral shoulder surgeries limited his ability to move his arms above his head.

11.     On March 12, 2012, Genovezos reported to chiropractor Dr. Jeffrey Swift that he recently slipped on deck and fell while fishing onboard a vessel not owned by Plaintiffs. He complained of acute pain with lumbar discomfort with some

3

radiation into his right lower extremity. He treated with Dr. Swift regularly throughout 2012.

12.     On July 18, 2012, Genovezos reportedly injured his lumbar spine while fishing for tuna onboard a vessel not owned by Plaintiffs.

13.     On October 30, 2012, Genovezos reported to Dr. Swift that he exacerbated his lumbar spine pain after lifting baskets of scallops onboard a vessel not owned by Plaintiffs. His lumbar spine MRI showed enlarging left foraminal disc extrusion L3-L4 with compression of exiting left L3 nerve root. Disc and facet degenerative changes results in minimal-mild central narrowing slightly progressed since a MRI from February 2010. After reviewing Genovezos' MRI, Dr. Swift noted he likely has a herniated disc at L3/4 and referred him for a neurological consultation with Dr. Matthew Phillips at Southcoast Physicians Group.

14.     On December 10, 2012, Genovezos underwent a far lateral/transpedicular minimally invasive L3-L4 microdiskectomy with microdissection with Dr. Phillips. Genovezos' preoperative diagnosis was left L3-L4 far lateral herniated nucleus pulposus and root compression.

15.     On March 20, 2013, and throughout 2013, Genovezos resumed chiropractic care with Dr. Swift and repeatedly reported lower thoracic and lumbar discomfort after fishing onboard a vessel not owned by Plaintiffs.

16.     On March 25, 2014, Genovezos continued reports of lower thoracic and mid-lower lumbar discomfort to Dr. Swift.

17.     On September 2, 2014, Genovezos complained of lower lumbosacral discomfort after falling while fishing onboard a vessel not owned by Plaintiffs.

18.     On May 29, 2015, he presented to Dr. Swift reporting of pain in his lower thoracic and upper lumbar that required the use of a back brace while fishing onboard a vessel not owned by Plaintiffs.

19.     On October 21, 2015, Genovezos was seen at Morton Hospital and received a lumbar epidural steroid injection at his L5-S1 level for treatment of his chronic low back pain and lumbar radiculopathy. The note indicates an "acute exacerbation of chronic low back pain with left greater than right" L3 radicular symptoms.

20.     On November 24, 2015, Genovezos presented to Dr. Swift for adjustments. He reported right shoulder pain in the posterior shoulder in the region of the infraspinatus as well as the apex of his shoulder. Genovezos was "offloaded in Portland" after he was hit on his right shoulder by his neck onboard a fishing vessel not owned by Plaintiffs.

21.     On November 30, 2015, Genovezos was seen at Morton Hospital and received lumbar epidural steroid injections at the L5-S1 level and L2-3 level for his lumbar radiculopathy and degenerative disc disease.

22.     On January 19, 2017, Genovezos was seen at Morton Hospital and received a lumbar epidural steroid injection L4-5 for treatment of his lumbar radiculopathy and lumbar pain.

23.     On February 23, 2017, Genovezos was seen at Morton Hospital and received therapeutic intra-articular injection of his right shoulder for treatment of his history of right shoulder arthritis. He also received a lumbar epidural steroid injection at L5-S1 during that visit.

24.     On October 6, 2017, as ordered by Dr. John Podkowa, Genovezos received lumbar epidural steroid injection at L5-S1 and therapeutic intra-articular injection of his right shoulder at Morton Hospital.

25.     On January 29, 2018, Genovezos complained to Dr. Swift of right lumbar pain after he was knocked to his knees onto the fishing vessel deck from a large wave onboard a vessel not owned by Plaintiffs. He continued to intermittently complain of right lumbar discomfort and lower thoracic discomfort in the following months.

26.     On February 7, 2018, again ordered by Dr. Podkowa, Genovezos received lumbar epidural steroid injection and therapeutic intra-articular injection of his right and left shoulders at Morton Hospital. Genovezos was noted to have a history of lumbar radiculopathy and bilateral shoulder pain.

27.     On December 10, 2018, Genovezos presented to Dr. Swift following a "very hard" fall on the deck of a fishing vessel not owned by Plaintiffs. He landed on his back and developed lumbar lower extremity complaints.

28.     On December 10, 2018, Genovezos presented at Morton Hospital's Pain Clinic with chronic back and bilateral shoulder pain that had been reportedly ongoing for twenty [20] years.

29.     On December 11, 2018, Genovezos received bilateral glenohumeral joint injections. On December 20, 2018, Genovezos received right L5-S1 epidural steroid injection for treatment of his recurrent lumbar radiculopathy and lumbar degenerative disc disease.

30.     On February 25, 2019, Genovezos reported to Dr. Swift that he slipped and fell on a fishing vessel deck on February 22, 2019 onboard a vessel not owned by Plaintiffs. He was pulling a wire when his legs "went out from underneath" and he landed flat on his back. He experienced some mid thoracic discomfort since his fall. Dr. Swift noted Genovezos diagnosis as radiculopathy, lumbar region and dorsopathy. Genovezos' thoracic strain was secondary to his slip and fall.

31.     On March 27, 2019, Genovezos underwent bilateral glenohumeral joint injections with Dr. Levin.

32.     On June 19, 2019, Genovezos was treated by Dr. Swift for ache and throbbing of his lumbar spine.

33.     On July 2, 2019, Genovezos was seen at Morton Hospital and underwent bilateral glenohumeral joint injections as well as a lumbar epidural steroid injection at L5-S1. He complained of bilateral shoulder pain and lumbar radiculopathy.

34.     On July 3, 2019, Genovezos reported to Dr. Swift that fishing exacerbated his thoracic and lumbar complaints. At that visit, Genovezos also reported left shoulder pain.

35.     On July 11, 2019, Genovezos presented to Dr. Swift with complaints of right lower thoracic and upper lumbar spine pain.

36.     On July 23, 2019, Genovezos underwent lumbar epidural steroid injections at L4-5 with Dr. Levin at Morton Hospital.

37.     On September 5, 2019, he had lumbar epidural steroid injections at L5-S1 at Morton Hospital.

38.     On September 25, 2019, Genovezos complained of left lower thoracic and right lumbar pain to Dr. Swift. He was encouraged to wear his lumbar support during his next fishing trip.

39.     On October 7, 2019, Genovezos complained of right lower thoracic and mild lumbar discomfort as well as pain.

40.     On October 8, 2019, Genovezos reported to Dr. Swift significant restriction to his cervical range of motion from his previous cervical fusion.

41.     On December 19, 2019, approximately two [2] months before the first alleged incident, Genovezos presented at Morton Hospital's Pain Clinic for lumbar epidural steroid injections at L5-S1 for treatment of his recurrent lumbar radiculopathy. Upon information and belief, Genovezos also received bilateral shoulder injections at that visit.

42.     Genovezos' medical records note his extensive treatment for neck, back and bilateral shoulder conditions, surgeries and other treatment prior to his employment onboard the Plaintiffs' vessels in 2020.

43.     On February 17, 2020, Genovezos executed a crew agreement for employment onboard the F/V JANE ELIZABETH. Although the crew agreement indicates

F/V EILEEN RITA, the agreement applied to his employment onboard the F/V JANE ELIZABETH. *See Crew Agreement, attached hereto as* **Exhibit A**.

44.   Genovezos signed the February 17, 2020 crew agreement and certified that he was "fit for duty" and knew of "no physical disabilities, impairments, lingering injuries and/or illness at the present time." He also failed to report that he had any physical conditions, including but not limited to pain, injury or surgery on his back, neck or shoulders. *See* **Exhibit A.**

45.   Genovezos thereafter completed a closed area scalloping trip onboard F/V JANE ELIZABETH and landed back in New Bedford on February 28, 2020.

46.   On March 5, 2020, Genovezos executed a crew agreement for employment onboard the F/V EILEEN RITA. *See Crew Agreement, attached hereto as* **Exhibit B**.

47.   Genovezos signed the March 5, 2020 crew agreement and certified that he was "fit for duty" and knew of "no physical disabilities, impairments, lingering injuries and/or illness at the present time." He also failed to report that he had any physical conditions, including but not limited to pain, injury or surgery on his back, neck or shoulders. *See* **Exhibit B**.

48.   Genovezos thereafter completed an open area scalloping trip onboard F/V EILEEN RITA and landed back in New Bedford on March 23, 2020.

49.   In the crew agreements executed by Genovezos for F/V JANE ELIZABETH and F/V EILEEN RITA, he knowingly denied any prior and pre-existing back and bilateral shoulder conditions. *See* **Exhibits A** *and* **B.**

50.     Plaintiffs would not have hired Genovezos if they had known about, and Genovezos had disclosed, information on his pre-existing neck, back and bilateral shoulder conditions and prior injuries as well as his prior surgeries and treatment.

51.     Upon return to port on March 23, 2020, Genovezos first submitted his claims that he sustained neck, back and shoulder injuries during his February 2020 trip onboard F/V JANE ELIZABETH and March 2020 onboard F/V EILEEN RITA.

52.     Plaintiffs commenced payment of Maintenance and Cure immediately following receipt of Genovezos' complaints concerning his claimed injuries onboard F/V JANE ELIZABETH and F/V EILEEN RITA.

53.     On March 30, 2020, Genovezos was examined by a nurse practitioner at Southcoast Orthopedics and Sports Medicine. The nurse practitioner's impression based on the images included shoulder impingement in the left and right, arthritis of both glemohumeral joints, injuries in both rotator cuffs, and tendinopathy of left biceps tendon.

54.     On March 31, 2020, Genovezos was examined by Dr. Phillips at Southcoast Physicians Group for lumbar radiculopathy, lumbar spondylosis, cervical myelopathy, neck pain, and cervical radiculopathy due to degenerative join disease of his spine.

55.     On April 1, 2020, Genovezos continued to report to Dr. Swift significant pain in his cervical spine as well as lumbar pain with radiation into the right lower

extremity. Dr. Swift reviewed Genovezos' films included his CT scan of his left shoulder that showed no evidence of acute fracture or dislocation.

56.      On April 10, 2020, Genovezos' cervical spine MRI showed "Postop changes. Cervical spondylosis. Significant degenerative changes of the right C3-C4 facet joint." His lumbar spine MRI showed degenerative changes at all levels with an impression of "Degenerative disc disease. Scoliosis. Right lateral disc protrusion osteophyte complex L4-L5." The "Problem List" contained in the Southcoast Hospital records included the following: Neck pain "1/21/2015-Present", Chronic pain "January 21, 2015-Present".

57.      On April 21, 2020, Genovezos' left shoulder MRI showed the following: advanced moderate degenerative change at the glenohumeral joint with degeneration and/or tear of the glenoid labrum; no evidence for full-thickness rotator cuff tendon tear; new partial tear of the conjoined supraspinatus infraspinatus tendon; advanced subscapularis tendinopathy with new superficial undersurface tear of the distal superior tendon; mild biceps tendinopathy; status post Mumford procedure; small glenohumeral joint effusion with nonspecific synovial proliferation and mild bursitis.

58.      On April 21, 2020, Genovezos' right shoulder MRI report indicated that there is again evidence of truncallon of the acromion, resection of the distal clavicle with chronic widening of the acromiociavicular joint. The MRI impression was as follows: interval development of chronic large full-thickness tear of the supraspinatous tendon propagating into the conjoined intraspinatus tendon

11

associated with muscle volume loss; interval development of chronic full-thickness tear of the distal superior subscapularis tendon associated with muscle volume loss; previous biceps tenodesis without evidence for recurrent tear; advanced degenerative change at the glenohumeral joint with increased anterior superior subluxation of the humerus, diffuse degeneration of the glenoid labrum; status post Mumford procedure; new small glenohumeral joint effusion and mild bursitis.

59.    On April 23, 2020, Genovezos followed up with Dr. Christopher Robertson at Southcoast Orthopedic & Sports Medicine following the MRI of his right and left shoulders. Dr. Robertson reviewed the MRI images and noted that his right shoulder showed some chronic rotator cuff tearing with atrophy of the supraspinatus, infraspinatus and subscapularis. He noted that the right glenohumeral osteoarthritis was certainly signification with some slight glenoid wear. There was proximal migration of the humeral head on the right. Dr. Robertson noted that Genovezos' right shoulder showed more pathology than his left. Genovezos' left shoulder showed more degenerative change in the shoulder consistent with the right side. Dr. Robertson noted that Genovezos' glenohumeral arthritis was certainly present, but the left side of the rotator cuff appeared to be primarily intact. There was a small partial undersurface tear at the supraspinatus on the left shoulder but no full-thickness tears or atrophy present. There was some significant biceps tendinopathy and some degenerative labral changes on the left as well.

12

60.     On April 30, 2020, Dr. Phillips saw Genovezos for his post-imaging follow up and discussed the ramifications of his possible myelopathy, degenerative spine disease, spondylosis and pain syndrome and the operative and non-operative treatment options. Dr. Phillips saw no clear role for surgical intervention at that time.

61.     On May 13, 2020, Genovezos was examined at MGH by Dr. Perlmutter, the same orthopedic surgeon for his prior bilateral shoulder surgeries. During that visit, Dr. Perlmutter diagnosed: left shoulder moderate to severe degenerative arthritis with partial thickness rotator cuff tear, fight large rotator cuff tear, rotator cuff arthropathy, and probable left ulnar neuropathy/cubital tunnel syndrome.

62.     On September 2, 2020, Genovezos was examined by Dr. Neal Chen at MGH for his bilateral shoulder complaints. Dr. Chen recommended bilateral shoulder surgery.

63.     On November 17, 2020, Dr. Phillips met with Genovezos for a telemedicine visit. Genovezos' recent thoracic MRI showed no significant canal stenosis or neural foraminal narrowing. Dr. Phillips' assessment included lumbar spondylosis, cervical spondylosis, and chronic bilateral thoracic back pain.

64.     Shortly thereafter, Plaintiffs approved Genovezos' request for bilateral shoulder surgery as ordered by Dr. Chen.

65.     On September 21, 2021, Genovezos was examined by Dr. Philips for his cervical and lumbar spine concerns. Dr. Philips noted his diagnosis of cervical

spondylosis and lumbar spondylosis. He ordered further imaging and noted potential for surgical intervention.

66.    On September 28, 2021, Dr. Chen performed Genovezos' left shoulder insertion prosthesis reverse shoulder. Genovezos pre and post-operative diagnosis was left shoulder osteoarthritis and rotator cuff tear. The record notes findings of "arthritis and rotator cuff tendinopathy."

67.    Upon information and belief, Genovezos' right shoulder surgery has not yet been scheduled.

68.    On October 13, 2021, Genovezos was examined by Dr. Neal Chung-Jen Chen. Genovezos complained of having post operation pain of his shoulder and that he had to sleep upright.  X-rays indicated that the shoulder was in a good position. Dr. Chen recommended a sling and physical therapy to start week six of post operation.

69.    On October 15, 2021, Genovezos reported to the emergency department after falling at his home.  Genovezos reported, that when when he stood up, his leg was numb and an ice pack fell from his shoulder, wrapped around his leg, causing him to fall.  He also reported an episode of chest pain right before he fell and believes he lost consciousness after he fell.  Genovezos denied other complaints and chronic leg weakness/numbness and that the numbness was from his position in the chair.  There was no evidence of fracture or subluxation.  The attending physician noted no acute changes in the head area.

14

70.     On October 26, 2021, Genovezos was re-examined by Dr. Matthew Philips for ongoing complaints relating to the cervical and lumbar spine area.  Genovezos alleged to have worsening neck pain as a result of a fall at home, with worsening radiation in both arms and associated numbness.  A review of recent CT imaging revealed C3/4 and C7/T1 anterolisthesis without instability.

71.     On October 28, 2021, Dr. Chen followed-up with Genovezos regarding his fall on October 15, 2021.  Dr. Chen observed no fractures or dislocation of the area, noting it was clean, intact, and dry.  He recommended continued use of the sling.

72.     On November 17, 2021, Dr. Chen saw Genovezos for a postoperative visit regarding Genovezos' left shoulder surgery performed on September 28, 2021. Dr. Chen noted continued pain at the surgical site and some neuropathy in the left small finger.  Through imaging, Dr. Chen noted the shoulder prosthetic appeared in good position.  Dr. Chen recommended the sling be removed and for physical therapy begin.  At the time of his visit, Genovezos was taking Tylenol and aspirin for the pain, no longer taking narcotics.

73.     On November 24, 2021, Genovezos underwent an MRI of the cervical-spine, ordered by Dr. Philips, in relation to the exacerbated pain syndrome.  The MRI revealed various disc bulges, degenerative changes, and evidence of prior surgery.

74.     On December 2, 2021, an initial physical therapy treatment plan was assessed. The initial plan recommended physical therapy twice a week for four months.

75.     On February 16, 2022, Genovezos met with Dr. Chen regarding pain in the joint of his left shoulder.  Dr. Chen observed Genovezos was doing well overall, pain was improving with occasional use of Tylenol.  There was no noted changes in the tingling in the middle, ring, and small fingers.  Dr. Chen recommended continued physical therapy.

76.     Genovezos failed to disclose his preexisting bilateral shoulder conditions as well as his cervical and lumbar spine conditions prior to his employment onboard F/V JANE ELIZABETH and/or F/V EILEEN RITA.

77.     Upon information and belief, Genovezos' neck and back conditions are degenerative conditions that pre-existed his employment onboard the Plaintiffs' vessels and are not the result of any acute injuries onboard the Plaintiffs' vessels.

78.     Upon information and belief, Genovezos' bilateral shoulder conditions are degenerative conditions that pre-existed his employment onboard the Plaintiffs' vessels and are not the result of any acute injuries onboard the Plaintiffs' vessels.

79.     Plaintiffs continue to pay Genovezos' Maintenance and Cure as demanded.

**COUNT I:**
**<u>DECLARATORY RELIEF ON OBLIGATION TO PAY</u>**
**<u>MAINTENANCE AND CURE</u>**
**(John and Jane, LLC vs. Peter Genovezos)**

80.     Plaintiffs reiterate and reallege their allegations contained in Paragraph Nos. 1-79 inclusive and incorporate same as if fully set forth herein.

81.     A seaman's employer is entitled to investigate a seaman's claim for Maintenance and Cure benefits.

82.     A seaman's employer is allowed to rely on certain legal defenses to deny the seaman's claims for maintenance and cure benefits, including the defense that the allegedly injured seaman willfully concealed a preexisting medical condition(s) from his employer.

83.     An employer's obligation to pay Maintenance and Cure extends only to those injuries seamen sustain while in the service of the vessel.

84.     An employer may deny Maintenance and Cure for an injury which existed for many years prior to the seaman's employment aboard the vessel, and which did not arise out of, or become aggravated by his service aboard the vessel. *See Capurro v. the All Am.*, 106 F. Supp. 693, 694 (E.D.N.Y. 1952); *Miller v. Lykes Bros.-Ripley S. S. Co.*, 98 F.2d 185, 186 (5th Cir. 1938).

85.     A seaman's employer has no obligation to pay Maintenance and Cure when a seaman fraudulently conceals a relevant pre-existing medical condition(s) from his employer. *See G&J Fisheries v. Peter Amaral & Bhf Blue E.,* 2020 U.S. Dist. LEXIS 226118, at *20 (D. Mass. Oct. 15, 2020) (quoting *Block Island Fishing Inc. v. Rogers,* 149 F. Supp.3d 214, 215 n.4 (D. Mass. 2016) (citing *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547, 548 (5th Cir. 1968), *aff'd in part and vacated in part on other grounds, Block Island Fishing, Inc. v. Rogers*, 844 F.3d 358, 364 (1st Cir. 2016)); *Dillon v. United States*, 357 F. Supp. 3d 49, 60 (D. Mass. 2019).

86.     A seaman must disclose a past illness or injury when the employer would consider it a matter of importance. *McCorpen,* 396 F. 2d at 548-49.

87.     Genovezos received medical treatment for his neck, back and bilateral shoulders in the months and years prior to his employment onboard the Plaintiff, John and Jane, LLC's vessel.

88.     On February 17, 2020, Genovezos executed a crew agreement for employment onboard the F/V JANE ELIZABETH. *See **Exhibit A***.

89.     By signing the crew agreement, Genovezos certified that he was "fit for duty" and knew of "no physical disabilities, impairments, lingering injuries and/or illness at the present time." He also failed to report that he had any pain, injury or surgery on his back, neck or shoulders.

90.     Plaintiff, John and Jane, LLC, subsequently discovered from Genovezos' medical records that he suffered from prior and pre-existing neck, back and bilateral shoulder conditions and pain, and had undergone multiple surgeries, prior to his employment with Plaintiff, John and Jane, LLC.

91.     Genovezos made multiple intentional misrepresentations on his executed crew agreements and pre-employment forms.

92.     Plaintiff, John and Jane, LLC relied on Genovezos' representations concerning his good health in his crew agreement and pre-employment forms in making its decision to hire him as a crewmember onboard F/V JANE ELIZABETH.

93.     Plaintiff, John and Jane, LLC, would not have hired Genovezos if it had known about his prior and pre-existing neck, back and bilateral shoulder conditions.

94.     Plaintiff, John and Jane, LLC, has paid and continues to pay Genovezos' Maintenance and Cure since his reported alleged injuries onboard F/V JANE ELIZABETH.

95.     Plaintiff, John and Jane, LLC, seeks a declaration from this Honorable Court that Genovezos willfully concealed his prior and pre-existing neck, back and bilateral shoulder conditions in his pre-employment crew agreement forms.

96.     Plaintiff, John and Jane, LLC, also seeks a declaration from this Honorable Court that due to Genovezos' willful concealment of his prior and pre-existing neck, back and bilateral shoulder conditions, Plaintiff, John and Jane, LLC, is not obligated to pay Maintenance and Cure to Genovezos for his alleged injuries onboard F/V JANE ELIZABETH.

    **WHEREFORE,** the Plaintiff, John and Jane, LLC, prays that this Honorable Court enter judgment on Count I in favor of Plaintiff and against the Defendant, Peter Genovezos, and issue a Declaratory Judgment as follows:

a.  Plaintiff, John and Jane, LLC, is not obligated to pay Genovezos Maintenance and Cure;

b.  That Genovezos return any and all monies paid to him or on his account by Plaintiff, John and Jane, LLC, for Maintenance and Cure due to his willful concealment to Plaintiff;

c.  In the alternative, that any damages recovered by Genovezos be reduced by all monies paid to him by Plaintiff, John and Jane, LLC; and

d.  Any other such other relief as in law and justice it may be entitled to receive.

**COUNT II:**
**UNJUST ENRICHMENT**
**(John and Jane, LLC vs. Peter Genovezos)**

97.     Plaintiff, John and Jane, LLC, reiterates and realleges its allegations contained in

Paragraph Nos.1-79 inclusive and incorporates same as if fully set forth herein.

98.     Genovezos received medical treatment for his neck, back and bilateral shoulders

in the months and years prior to his employment with the Plaintiff, John and Jane,

LLC.

99.     On February 17, 2020, Genovezos executed the crew agreement for F/V JANE

ELIZABETH and knowingly denied any prior and pre-existing neck, back and

bilateral shoulder conditions. *See **Exhibit A***.

100.    Genovezos made multiple intentional misrepresentations on his executed crew

agreement and pre-employment forms.

101.    Plaintiff, John and Jane, LLC, relied on Genovezos' responses in his pre-

employment forms when determining whether to hire him.

102.    Plaintiff, John and Jane, LLC, would not have hired Genovezos if it had known

about his prior and pre-existing neck, back and bilateral shoulder conditions.

103.    Plaintiff, John and Jane, LLC, would not have hired Genovezos as a crewmember

onboard the F/V JANE ELIZABETH but for Genovezos' misrepresentations of

his good health.

104.    In reliance on Genovezos' misrepresentations concerning his prior health,

Plaintiff, John and Jane, LLC, has expended money in Maintenance and Cure

payments related to Genovezos' neck, back and bilateral shoulder conditions.

20

105.    Plaintiff, John and Jane, LLC, subsequently discovered from Genovezos' medical records that he suffered from prior and pre-existing neck, back and bilateral shoulder conditions and pain, and had undergone multiple surgeries, prior to his employment with Plaintiff, John and Jane, LLC.

106.    Genovezos knew or should have known that he had no right to receive Maintenance and Cure from Plaintiff, John and Jane, LLC, for medical conditions that he willfully concealed from Plaintiff, John and Jane, LLC, when obtaining employment.

107.    Genovezos has been unjustly enriched by his receipt and retention of Maintenance and Cure paid by Plaintiff, John and Jane, LLC, and under the present circumstances, Genovezos' retention of monies paid by Plaintiff is inequitable, unfair, and unjust.

108.    By reason of Genovezos' unjust enrichment, Plaintiff, John and Jane, LLC, has incurred damages, including but not limited to monies paid in Maintenance and Cure.

**WHEREFORE,** the Plaintiff, John and Jane, LLC, prays that this Honorable Court enter judgment on Count II in favor of Plaintiff and against Defendant, Peter Genovezos, and issue a Declaratory Judgment as follows:

a.  That Genovezos return any and all monies paid to him or on his account by Plaintiff, John and Jane, LLC, for Maintenance and Cure due to his willful concealment to Plaintiff;

    b.  In the alternative, that any damages recovered by Genovezos be reduced by all monies paid to him by Plaintiff, John and Jane, LLC; and

    c.  Any other such other relief as in law and justice it may be entitled to receive.

## COUNT III:
## EQUITABLE ESTOPPEL
### (John and Jane, LLC vs. Peter Genovezos)

109.    Plaintiff, John and Jane, LLC, reiterates and realleges its allegations contained in Paragraph Nos. 1-79 inclusive and incorporates same as if fully set forth herein.

110.    Genovezos received medical treatment for his back and bilateral shoulders in the months and years prior to his employment with Plaintiff, John and Jane, LLC.

111.    On February 17, 2020, Genovezos executed the crew agreement for F/V JANE ELIZABETH and knowingly denied any prior and pre-existing neck, back and bilateral shoulder conditions. *See Exhibit A*.

112.    Genovezos made multiple intentional misrepresentations on his executed crew agreement and pre-employment forms.

113.    Plaintiff, John and Jane, LLC, relied on Genovezos' responses in his pre-employment forms when determining whether to hire him.

114.    Plaintiff, John and Jane, LLC, did not and could not have known that Genovezos' responses in his executed crew agreement and pre-employment forms were misleading.

115.    Plaintiff, John and Jane, LLC, would not have hired Genovezos if it had known about his prior and pre-existing neck, back and bilateral shoulder conditions.

116.    Plaintiff, John and Jane, LLC, would not have hired Genovezos as a crewmember onboard the F/V EILEEN RITA but for Genovezos' misrepresentations of his good health.

117.    In reliance on Genovezos' misrepresentations concerning his prior health, Plaintiff, John and Jane, LLC, has expended money in Maintenance and Cure payments related to Genovezos' neck, back, and bilateral shoulder conditions.

118.    Plaintiff, John and Jane, LLC, subsequently discovered from Genovezos' medical records that he suffered from prior and pre-existing neck, back and bilateral shoulder conditions and pain, and had undergone multiple surgeries, prior to his employment with Plaintiff, John and Jane, LLC.

119.    Genovezos knew or should have known that he had no right to receive Maintenance and Cure for a medical condition that he willfully concealed from Plaintiff, John and Jane, LLC, when obtaining employment.

120.    Genovezos accepted Plaintiff, John and Jane, LLC, monies for Maintenance and Cure despite having willfully concealed his medical condition that preexisted his employment with Plaintiff.

121.    Genovezos has procured Maintenance and Cure by his misrepresentations and should therefore be estopped from asserting any right to funds he has received and estopped from asserting a claim for any additional funds from Plaintiff, John and Jane, LLC.

**WHEREFORE,** the Plaintiff, John and Jane, LLC, prays that this Honorable Court enter judgment on Count III in favor of Plaintiff and against Defendant, Peter Genovezos, and issue a Declaratory Judgment as follows:

a.  That Genovezos return any and all monies paid to him or on his account by Plaintiff, John and Jane, LLC, for Maintenance and Cure due to his willful concealment to Plaintiff;

b.  In the alternative, that any damages recovered by Genovezos be reduced by all monies paid to him by Plaintiff, John and Jane, LLC; and

c.  Any other such other relief as in law and justice it may be entitled to receive.

**COUNT IV:**
**FRAUD**
**(John and Jane, LLC vs. Peter Genovezos)**

122.  Plaintiff, John and Jane, LLC, reiterates and realleges its allegations contained in Paragraph Nos. 1-79 inclusive and incorporates same as if fully set forth herein.

123.  Genovezos received medical treatment for his neck, back and bilateral shoulders in the months and years prior to his employment with the Plaintiff, John and Jane, LLC.

124.  On February 17, 2020, Genovezos executed the crew agreement for F/V JANE ELIZABETH and knowingly denied any prior and pre-existing neck, back and bilateral shoulder conditions. *See **Exhibit A**.*

125.  Genovezos willfully and fraudulently concealed his pre-existing medical conditions and intentionally made multiple misrepresentations and fraudulent

entries concerning his health on Plaintiff, John and Jane, LLC's pre-employment forms.

126.    Plaintiff, John and Jane, LLC, would not have hired Genovezos if it had known about his prior and pre-existing neck, back and bilateral shoulder conditions.

127.    Genovezos persuaded Plaintiff, John and Jane, LLC to hire him as a crewmember onboard F/V JANE ELIZABETH by misrepresenting his health.

128.    Upon information and belief, Genovezos allegedly claims that he sustained neck, back and bilateral shoulder injuries while working onboard F/V JANE ELIZABETH.

129.    In reliance on Genovezos' misrepresentations concerning his prior health and his misrepresentations that he sustained neck, back and bilateral should injuries while onboard F/V JANE ELIZABETH, Plaintiff, John and Jane, LLC, has expended money in Maintenance and Cure payments related to Genovezos' claimed conditions.

130.    Plaintiff, John and Jane, LLC, subsequently discovered from Genovezos' medical records that he suffered from prior and pre-existing neck, back and bilateral shoulder conditions and pain, and had undergone multiple surgeries, prior to his employment with Plaintiff, John and Jane, LLC.

131.    Genovezos knew or should have known that he had no right to receive Maintenance and Cure for medical conditions that he fraudulently concealed from Plaintiff, John and Jane, LLC, when obtaining employment.

132.    As a result of Genovezos' fraudulent conduct in obtaining employment with Plaintiff, John and Jane, LLC, Plaintiff has incurred damages, including but not limited to monies paid in Maintenance and Cure.

**WHEREFORE,** the Plaintiff, John and Jane, LLC, prays that this Honorable Court enter judgment on Count IV in favor of Plaintiff and against Defendant, Peter Genovezos, and issue a Declaratory Judgment as follows:

a.  That Genovezos return any and all monies paid to him or on his account by Plaintiff, John and Jane, LLC, for Maintenance and Cure due to his fraudulent misrepresentations to Plaintiff;

b.  In the alternative, that any damages recovered by Genovezos be reduced by all monies paid to him by Plaintiff, John and Jane, LLC; and

c.  Any other such other relief as in law and justice it may be entitled to receive.

**COUNT V:**
**BREACH OF CONTRACT**
**(John and Jane, LLC vs. Peter Genovezos)**

133.    Plaintiff, John and Jane, LLC, reiterates and realleges its allegations contained in Paragraph Nos. 1-79 inclusive and incorporates same as if fully set forth herein.

134.    Genovezos received medical treatment for his neck, back and bilateral shoulders in the months and years prior to his employment with the Plaintiff, John and Jane, LLC.

135.    On February 17, 2020, Genovezos executed the crew agreement for F/V JANE ELIZABETH and knowingly denied any prior and pre-existing neck, back and bilateral shoulder conditions. *See Exhibit A*.

136.     All conditions in the crew agreement have been performed and satisfied by Plaintiff, John and Jane, LLC.

137.     Genovezos has breached conditions precedent in his employment contract by inaccurately completing Plaintiff, John and Jane, LLC's pre-employment forms, misrepresenting his health, and his denial of any prior or pre-existing neck, back, and bilateral shoulder conditions.

138.     By reason of Genovezos' breaches, Plaintiff, John and Jane, LLC, has incurred damages, including but not limited to monies paid in Maintenance and Cure.

**WHEREFORE,** the Plaintiff, John and Jane, LLC, prays that this Honorable Court enter judgment on Count V in favor of Plaintiff and against Defendant, Peter Genovezos, and issue a Declaratory Judgment as follows:

a.  That Genovezos return any and all monies paid to him or on his account by Plaintiff, John and Jane, LLC, for Maintenance and Cure due to his breach of contract with Plaintiff;

b.  In the alternative, that any damages recovered by Genovezos be reduced by all monies paid to him by Plaintiff, John and Jane, LLC; and

c.  Any other such other relief as in law and justice it may be entitled to receive.

## COUNT VI:
### DECLARATORY RELIEF ON OBLIGATION TO PAY MAINTENANCE AND CURE
### (Bill and Eileen, LLC vs. Peter Genovezos)

139.     Plaintiffs reiterate and reallege their allegations contained in Paragraph Nos. 1-79 inclusive and incorporate same as if fully set forth herein.

140.    A seaman's employer is entitled to investigate a seaman's claim for Maintenance and Cure benefits.

141.    A seaman's employer is allowed to rely on certain legal defenses to deny the seaman's claims for maintenance and cure benefits, including the defense that the allegedly injured seaman willfully concealed a preexisting medical condition(s) from his employer.

142.    An employer's obligation to pay Maintenance and Cure extends only to those injuries seamen sustain while in the service of the vessel.

143.    An employer may deny Maintenance and Cure for an injury which existed for many years prior to the seaman's employment aboard the vessel, and which did not arise out of, or become aggravated by his service aboard the vessel. *See Capurro v. the All Am.*, 106 F. Supp. 693, 694 (E.D.N.Y. 1952); *Miller v. Lykes Bros.-Ripley S. S. Co.*, 98 F.2d 185, 186 (5th Cir. 1938).

144.    A seaman's employer has no obligation to pay Maintenance and Cure when a seaman fraudulently conceals a relevant pre-existing medical condition(s) from his employer. *See G&J Fisheries v. Peter Amaral & Bhf Blue E.,* 2020 U.S. Dist. LEXIS 226118, at *20 (D. Mass. Oct. 15, 2020) (quoting *Block Island Fishing Inc. v. Rogers,* 149 F. Supp.3d 214, 215 n.4 (D. Mass. 2016) (citing *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547, 548 (5th Cir. 1968), *aff'd in part and vacated in part on other grounds, Block Island Fishing, Inc. v. Rogers*, 844 F.3d 358, 364 (1st Cir. 2016)); *Dillon v. United States*, 357 F. Supp. 3d 49, 60 (D. Mass. 2019).

145.   A seaman must disclose a past illness or injury when the employer would consider it a matter of importance. *McCorpen,* 396 F. 2d at 548-49.

146.   Genovezos received medical treatment for his neck, back and bilateral shoulders in the months and years prior to his employment onboard the Plaintiff, Bill and Eileen, LLC's vessel.

147.   On March 5, 2020, Genovezos executed a crew agreement for employment onboard the F/V EILEEN RITA. *See **Exhibit B***.

148.   By signing the crew agreement, Genovezos certified that he was "fit for duty" and knew of "no physical disabilities, impairments, lingering injuries and/or illness at the present time." He also failed to report that he had any pain, injury or surgery on his back, neck or shoulders.

149.   Plaintiff, Bill and Eileen, LLC, subsequently discovered from Genovezos' medical records that he suffered from prior and pre-existing neck, back and bilateral shoulder conditions and pain, and had undergone multiple surgeries, prior to his employment with Plaintiff, Bill and Eileen, LLC.

150.   Genovezos made multiple intentional misrepresentations on his executed crew agreements and pre-employment forms.

151.   Plaintiff, Bill and Eileen, LLC relied on Genovezos' representations concerning his good health in his crew agreement and pre-employment forms in making its decision to hire him as a crewmember onboard F/V EILEEN RITA.

152.   Plaintiff, Bill and Eileen, LLC, would not have hired Genovezos if it had known about his prior and pre-existing neck, back and bilateral shoulder conditions.

153.    Plaintiff, Bill and Eileen, LLC, has paid and continues to pay Genovezos' Maintenance and Cure since his reported alleged injuries onboard F/V EILEEN RITA.

154.    Plaintiff, Bill and Eileen, LLC, seeks a declaration from this Honorable Court that Genovezos willfully concealed his prior and pre-existing neck, back and bilateral shoulder conditions in his pre-employment crew agreement forms.

155.    Plaintiff, Bill and Eileen, LLC, also seeks a declaration from this Honorable Court that due to Genovezos' willful concealment of his prior and pre-existing neck, back and bilateral shoulder conditions, Plaintiff, Bill and Eileen, LLC, is not obligated to pay Maintenance and Cure to Genovezos for his alleged injuries onboard F/V EILEEN RITA.

**WHEREFORE,** the Plaintiff, Bill and Eileen, LLC, prays that this Honorable Court enter judgment on Count VI in favor of Plaintiff and against the Defendant, Peter Genovezos, and issue a Declaratory Judgment as follows:

e.  Plaintiff, Bill and Eileen, LLC, is not obligated to pay Genovezos Maintenance and Cure;

f.  That Genovezos return any and all monies paid to him or on his account by Plaintiff, Bill and Eileen, LLC, for Maintenance and Cure due to his willful concealment to Plaintiff;

g.  In the alternative, that any damages recovered by Genovezos be reduced by all monies paid to him by Plaintiff, Bill and Eileen, LLC; and

h.  Any other such other relief as in law and justice it may be entitled to receive.

## COUNT VII:
## <u>UNJUST ENRICHMENT</u>
### (Bill and Eileen, LLC vs. Peter Genovezos)

156.    Plaintiff, Bill and Eileen, LLC, reiterates and realleges its allegations contained in Paragraph Nos. 1-79 inclusive and incorporates same as if fully set forth herein.

157.    Genovezos received medical treatment for his neck, back and bilateral shoulders in the months and years prior to his employment with the Plaintiff, Bill and Eileen, LLC.

158.    On March 5, 2020, Genovezos executed the crew agreement for F/V EILEEN RITA and knowingly denied any prior and pre-existing neck, back and bilateral shoulder conditions. *See **Exhibit B***.

159.    Genovezos made multiple intentional misrepresentations on his executed crew agreement and pre-employment forms.

160.    Plaintiff, Bill and Eileen, LLC, relied on Genovezos' responses in his pre-employment forms when determining whether to hire him.

161.    Plaintiff, Bill and Eileen, LLC, would not have hired Genovezos if it had known about his prior and pre-existing neck, back and bilateral shoulder conditions.

162.    Plaintiff, Bill and Eileen, LLC, would not have hired Genovezos as a crewmember onboard the F/V EILEEN RITA but for Genovezos' misrepresentations of his good health.

163.    In reliance on Genovezos' misrepresentations concerning his prior health, Plaintiff, Bill and Eileen, LLC, has expended money in Maintenance and Cure payments related to Genovezos' neck, back and bilateral shoulder conditions.

164.    Plaintiff, Bill and Eileen, LLC, subsequently discovered from Genovezos' medical records that he suffered from prior and pre-existing neck, back and bilateral shoulder conditions and pain, and had undergone multiple surgeries, prior to his employment with Plaintiff, Bill and Eileen, LLC.

165.    Genovezos knew or should have known that he had no right to receive Maintenance and Cure from Plaintiff, Bill and Eileen, LLC, for medical conditions that he willfully concealed from Plaintiff when obtaining employment.

166.    Genovezos has been unjustly enriched by his receipt and retention of Maintenance and Cure paid by Plaintiff, Bill and Eileen, LLC, and under the present circumstances, Genovezos' retention of monies paid by Plaintiff is inequitable, unfair, and unjust.

167.    By reason of Genovezos' unjust enrichment, Plaintiff, Bill and Eileen, LLC, has incurred damages, including but not limited to monies paid in Maintenance and Cure.

**WHEREFORE,** the Plaintiff, Bill and Eileen, LLC, prays that this Honorable Court enter judgment on Count VII in favor of Plaintiff and against Defendant, Peter Genovezos, and issue a Declaratory Judgment as follows:

d.  That Genovezos return any and all monies paid to him or on his account by Plaintiff, Bill and Eileen, LLC, for Maintenance and Cure due to his willful concealment to Plaintiff;

e.  In the alternative, that any damages recovered by Genovezos be reduced by all monies paid to him by Plaintiff, Bill and Eileen, LLC; and

f.  Any other such other relief as in law and justice it may be entitled to receive.

### COUNT VIII:
### EQUITABLE ESTOPPEL
### (Bill and Eileen, LLC vs. Peter Genovezos)

168.    Plaintiff, Bill and Eileen, LLC, reiterates and realleges its allegations contained in Paragraph Nos. 1-79 inclusive and incorporates same as if fully set forth herein.

169.    Genovezos received medical treatment for his back and bilateral shoulders in the months and years prior to his employment with Plaintiff, Bill and Eileen, LLC.

170.    On March 5, 2020, Genovezos executed the crew agreement for F/V EILEEN RITA and knowingly denied any prior and pre-existing neck, back and bilateral shoulder conditions. *See **Exhibit B***.

171.    Genovezos made multiple intentional misrepresentations on his executed crew agreement and pre-employment forms.

172.    Plaintiff, Bill and Eileen, LLC, relied on Genovezos' responses in his pre-employment forms when determining whether to hire him.

173.    Plaintiff, Bill and Eileen, LLC, did not and could not have known that Genovezos' responses in his executed crew agreement and pre-employment forms were misleading.

174.    Plaintiff, Bill and Eileen, LLC, would not have hired Genovezos if it had known about his prior and pre-existing neck, back and bilateral shoulder conditions.

175.    Plaintiff, Bill and Eileen, LLC, would not have hired Genovezos as a crewmember onboard the F/V EILEEN RITA but for Genovezos' misrepresentations of his good health.

176.    In reliance on Genovezos' misrepresentations concerning his prior health, Plaintiff, Bill and Eileen, LLC, has expended money in Maintenance and Cure payments related to Genovezos' neck, back, and bilateral shoulder conditions.

177.    Plaintiff, Bill and Eileen, LLC, subsequently discovered from Genovezos' medical records that he suffered from prior and pre-existing neck, back and bilateral shoulder conditions and pain, and had undergone multiple surgeries, prior to his employment with Plaintiff, Bill and Eileen, LLC.

178.    Genovezos knew or should have known that he had no right to receive Maintenance and Cure for a medical condition that he willfully concealed from Plaintiff, Bill and Eileen, LLC, when obtaining employment.

179.    Genovezos accepted Plaintiff, Bill and Eileen, LLC, monies for Maintenance and Cure despite having willfully concealed his medical condition that preexisted his employment with Plaintiff.

180.    Genovezos has procured Maintenance and Cure by his misrepresentations and should therefore be estopped from asserting any right to funds he has received and estopped from asserting a claim for any additional funds from Plaintiff, Bill and Eileen, LLC.

**WHEREFORE,** the Plaintiff, Bill and Eileen, LLC, prays that this Honorable Court enter judgment on Count VIII in favor of Plaintiff and against Defendant, Peter Genovezos, and issue a Declaratory Judgment as follows:

d.  That Genovezos return any and all monies paid to him or on his account by Plaintiff, Bill and Eileen, LLC, for Maintenance and Cure due to his willful concealment to Plaintiff;

e.  In the alternative, that any damages recovered by Genovezos be reduced by all monies paid to him by Plaintiff, Bill and Eileen, LLC; and

f.  Any other such other relief as in law and justice it may be entitled to receive.

### COUNT IX:
### FRAUD
### (Bill and Eileen, LLC vs. Peter Genovezos)

181.    Plaintiff, Bill and Eileen, LLC, reiterates and realleges its allegations contained in Paragraph Nos. 1-79 inclusive and incorporates same as if fully set forth herein.

182.    Genovezos received medical treatment for his neck, back and bilateral shoulders in the months and years prior to his employment with the Plaintiff, Bill and Eileen, LLC.

183.   On March 5, 2020, Genovezos executed the crew agreement for F/V EILEEN RITA and knowingly denied any prior and pre-existing neck, back and bilateral shoulder conditions. *See **Exhibit B***.

184.   Genovezos willfully and fraudulently concealed his pre-existing medical conditions and intentionally made multiple misrepresentations and fraudulent entries concerning his health on Plaintiff, Bill and Eileen, LLC's pre-employment forms.

185.   Plaintiff, Bill and Eileen, LLC, would not have hired Genovezos if it had known about his prior and pre-existing neck, back and bilateral shoulder conditions.

186.   Genovezos persuaded Plaintiff, Bill and Eileen, LLC to hire him as a crewmember onboard F/V EILEEN RITA by misrepresenting his health.

187.   Upon information and belief, Genovezos allegedly claims that he sustained neck, back and bilateral shoulder injuries while working onboard F/V EILEEN RITA.

188.   In reliance on Genovezos' misrepresentations concerning his prior health and his misrepresentations that he sustained neck, back and bilateral should injuries while onboard F/V EILEEN RITA, Plaintiff, Bill and Eileen, LLC, has expended money in Maintenance and Cure payments related to Genovezos' claimed conditions.

189.   Plaintiff, Bill and Eileen, LLC, subsequently discovered from Genovezos' medical records that he suffered from prior and pre-existing neck, back and bilateral shoulder conditions and pain, and had undergone multiple surgeries, prior to his employment with Plaintiff, Bill and Eileen, LLC.

190.    Genovezos knew or should have known that he had no right to receive Maintenance and Cure for medical conditions that he fraudulently concealed from Plaintiff, Bill and Eileen, LLC, when obtaining employment.

191.    As a result of Genovezos' fraudulent conduct in obtaining employment with Plaintiff, Bill and Eileen, LLC, Plaintiff has incurred damages, including but not limited to monies paid in Maintenance and Cure.

**WHEREFORE,** the Plaintiff, Bill and Eileen, LLC, prays that this Honorable Court enter judgment on Count IX in favor of Plaintiff and against Defendant, Peter Genovezos, and issue a Declaratory Judgment as follows:

a.    That Genovezos return any and all monies paid to him or on his account by Plaintiff, Bill and Eileen, LLC, for Maintenance and Cure due to his fraudulent misrepresentations to Plaintiff;

b.    In the alternative, that any damages recovered by Genovezos be reduced by all monies paid to him by Plaintiff, Bill and Eileen, LLC; and

c.    Any other such other relief as in law and justice it may be entitled to receive.

**COUNT X:**
**BREACH OF CONTRACT**
**(Bill and Eileen, LLC vs. Peter Genovezos)**

192.    Plaintiff, Bill and Eileen, LLC, reiterates and realleges its allegations contained in Paragraph Nos. 1-79 inclusive and incorporates same as if fully set forth herein.

193.     Genovezos received medical treatment for his neck, back and bilateral shoulders in the months and years prior to his employment with the Plaintiff, Bill and Eileen, LLC.

194.     On March 5, 2020, Genovezos executed the crew agreement for F/V EILEEN RITA and knowingly denied any prior and pre-existing neck, back and bilateral shoulder conditions. *See Exhibit B*.

195.     All conditions in the crew agreement have been performed and satisfied by Plaintiff, Bill and Eileen, LLC.

196.     Genovezos has breached conditions precedent in his employment contract by inaccurately completing Plaintiff, Bill and Eileen, LLC's pre-employment forms, misrepresenting his health, and his denial of any prior or pre-existing neck, back, and bilateral shoulder conditions.

197.     By reason of Genovezos' breaches, Plaintiff, Bill and Eileen, LLC, has incurred damages, including but not limited to monies paid in Maintenance and Cure.

**WHEREFORE,** the Plaintiff, Bill and Eileen, LLC, prays that this Honorable Court enter judgment on Count X in favor of Plaintiff and against Defendant, Peter Genovezos, and issue a Declaratory Judgment as follows:

d.   That Genovezos return any and all monies paid to him or on his account by Plaintiff, Bill and Eileen, LLC, for Maintenance and Cure due to his breach of contract with Plaintiff;

e.   In the alternative, that any damages recovered by Genovezos be reduced by all monies paid to him by Plaintiff, Bill and Eileen, LLC; and

    f.   Any other such other relief as in law and justice it may be entitled to receive.

DATED at Boston, Massachusetts, this 21st day of March, 2022.

                           Respectfully submitted,

                           /s/ Thomas L. Tisdale
                           Thomas L. Tisdale
                           NO. 624993
                           Tisdale and Nast Law Offices, LLC
                           10 Spruce Street
                           Southport, CT 06890
                           Tel:   203-254-8474
                           Fax:   203-254-1641
                           *ttisdale@tisdale-law.com*